OPINION OF THE COURT
Jeffrey M. Atlas, J.
As a consequence of stealing a woman’s handbag, defendant was charged, in the Criminal Court, with grand larceny in the third degree, and, at the request of the prosecutor, held in lieu of $2,500 bail. Although served at arraignment with notice that the matter was to be presented to the Grand Jury, the defendant, who had previously been convicted of other crimes, declined to avail himself of the right to testify before the Grand Jury. Moreover, because he was not aware of the availability of any witness who might attest to his innocence, he made no demand that the Grand Jury hear witnesses in his favor. Thereafter the District Attorney took testimony before the Grand Jury of two witnesses, Ironjain and Stiskin, each of whom claimed that after Stiskin’s purse was suddenly pulled from her arm the defendant was seen by them fleeing with the bag in his *14 hand. Upon that testimony the defendant was indicted for grand larceny in the third degree and arraigned upon the indictment in the Supreme Court.
At the Supreme Court arraignment, the District Attorney voluntarily disclosed to the defendant that another witness, one Neville, had told the arresting officers that she had seen a white male fleeing with Stiskin’s purse.
According to the prosecutor, Neville advised the officers that the thief had been pursued by a black male, by all accounts the defendant, who repeatedly called for the police to aid him in the capture of the thief. Indeed, by the time the police had arrived, Neville said, the defendant had stopped the white male and retrieved the purse but, “in the confusion” the police detained the defendant and set the thief free.
Our difficulties arise from the fact that Neville’s statement, reduced to writing and signed by her, was known to the prosecutor even before the Criminal Court arraignment of the defendant but was not presented to the defendant until after his arraignment on the indictment in the Supreme Court.*
The defendant seeks dismissal of this indictment for the failure of the District Attorney to present the exculpatory testimony of Ms. Neville to the Grand Jury and in the interest of justice. While these claims do not entitle the defendant to the relief sought by him, the facts underlying his demands for relief do sufficiently charge a deprivation of rights guaranteed by the Federal Constitution entitling him to dismissal of the indictment (see CPL 210.20, subd 1, pars [c], [h]; Pyle v Kansas, 317 US 213, 214).
To begin with, Neville’s statement, claiming as it does, that the defendant was not the thief but, rather, the captor, is one that obviously tends to exculpate the defendant and establish his innocence of the crime charged. Certainly the statement is one that the prosecutor may not knowingly suppress or conceal from a defendant who has requested evidence of that specific character (Brady v Maryland, 373 US 83). Moreover, given its obviously exculpatory nature, it is a statement which the prosecutor was obliged to disclose to the defense even in the absence of such a request (United States v Agurs, 427 US 97, 107). It is clear to me that the evidence with which we are here concerned was of such substantial value to the defense that elementary *15 fairness required it to be disclosed even without specific request for it (supra, at p 110).
In this case the defense does not contend that the prosecution never disclosed the material in question. Rather, the defense seeks adjustment for the prosecutor’s delay in disclosing the material until after the defendant was indicted. This contention forms the basis for two claims: first, that the prosecutor on his own, was obliged to present the material to the Grand Jury and, second, that, in any event, the prosecutor should have disclosed the statement at a time when the defense could still have used it to affect a crucial part of the proceeding.
The indictment ought not be dismissed simply because the prosecutor failed to present an exculpatory witness to the Grand Jury. As appealing as this argument has lately seemed to be, we ought to be reminded that the Grand Jury has not traditionally served to try, in full, issues of guilt or innocence. Indeed, its essential function has always been to determine if charges are sufficiently supported by evidence to warrant a trial of the charge (People v Calbud, Inc., 49 NY2d 389). Normally, it is at trial that the full contentions of the parties are heard, contested, and decided as supporting or defeating guilt beyond a reasonable doubt. Notwithstanding the onerous consequence of indictment and the risks of trial, the Grand Jury is not a forum for the trial of issues to be decided at the trial itself. In view of this, the prosecutor, whatever our awakening sense of fairness with respect to the Grand Jury proceedings, usually has no obligations to present to that body evidence which is exculpatory (see People v Isla, 96 AD2d 789). In the absence of a statutory duty to present such evidence, it seems clear that the prosecutor here was free (to the extent that his conscience allowed it) to present only such evidence as might support the charges and not present other exculpatory evidence. With respect to the second issue implicit in the defendant’s motion, some relief ought to be available.
Having noted that obviously exculpatory evidence ought to be disclosed to the defense even in the absence of a demand for it, I must now add that it ought to be disclosed at the earliest possible opportunity.
Indeed, the American Bar Association Standards for Criminal Justice, The Prosecution Function, standard 3-3.11 declares it “unprofessional conduct for a prosecutor intentionally to fail to make disclosure to the defense, at the earliest feasible opportunity, of the existence of evidence which tends to negate the guilt of the accused”.
*16 It is clear that the duty to disclose such exculpatory material arises from the prosecutor’s interest, overriding the particular and immediate interest of his client in the prosecution, that justice be done (see United States v Agurs, supra). It is also clear that justice cannot be done if the prosecutor in withholding evidence, even for a brief period, casts himself in the role of an architect of a proceeding that does not comport with minimal standards of justice (see Brady v Maryland, supra, pp 87-88). The prosecution, it follows, must bend every effort to avoid prejudice to the defendant in all future proceedings.
I must note, however, that whatever the prosecutor’s obligations and the prospective effect of them, if, by the brief denial of this evidence to the defense, the defendant suffered no prejudice, still the proceedings need not be voided (cf. People v Jones, 44 NY2d 76).
In this case, I am of the view that the prejudice, or at least the potential prejudice, to the defendant was real (People v Di Falco, 44 NY2d 482).
CPL 190.50 in pertinent part states that in certain circumstances:
“5. * * * (a) * * * the district attorney must notify the defendant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein [and]
“6. A defendant or person against whom a criminal charge is being or about to be brought in a grand jury proceeding may request the grand jury, either orally or in writing, to cause a person designated by him to be called as a witness in such proceeding. The grand jury may as a matter of discretion grant such request and cause such witness to be called pursuant to subdivision three.”
Surely these provisions, a complete departure from the constitutional and common-law view that the accused had no right to present his version of the event to the Grand Jury (see United States v Shulman, 466 F Supp 293; People v Ianniello, 21 NY2d 418, cert den 393 US 827), sought to prevent the indictment and. trial for one who could, in the first instance, persuade a Grand Jury that the charges against him were unfounded or mistakenly brought.
The defendant here made no demand to testify nor did he request that witnesses in his favor be heard by the Grand Jury even though such witnesses existed. Each failure, in my view, was directly attributable to the fact that the existence of these *17 witnesses was unknown to him because the prosecutor did not disclose to the accused the existence of such witnesses at a time when the defendant might have advanced such testimony in a manner most beneficial to him. In this respect the prosecutor, wittingly or otherwise, obtained an unconscionable tactical advantage to which, clearly, he was not entitled.
It ought not to be forgotten that a defendant, however sincerely he maintains his innocence, may be reluctant to testify before a Grand Jury in view of the prosecutor’s likely effort to impeach his credibility through use of his prior convictions. This may be particularly true when the defendant is aware that he can offer no witnesses to support his view of the event and considerably less true when independent witnesses, offered on the defendant’s behalf, can enhance the defendant’s credibility before that body.
Moreover, even if the defendant, under the best of circumstances, ultimately chooses not to testify before the Grand Jury, he might nonetheless wish to avail himself of the opportunities provided for in CPL 190.50 (subd 6) by requesting that the Grand Jury hear his witnesses. While it is true that thé Grand Jury could decline to hear the testimony, the defendant’s opportunity to make the request ought not to be denied by the action of the District Attorney.
In my view the District Attorney’s failure to immediately disclose to the defense the existence of this exculpatory witness resulted in prejudice to the defendant sufficient to dismiss the indictment here (CPL 210.20, subd 1, pars [c], [h]).

 After receiving the statement, defense counsel, with reasonable diligence, interviewed Ms. Neville and learned from her that her version of the event had been confirmed for the police at the scene by a Canadian traveler, whose name, but not address, may have been preserved.