Lavallee v. Warden, NH State Prison   CV-02-174-JM  01/07/03  P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Randy Lavallee


    v.                                        Civil No. 02-174-JM
                                              Opinion No. 2003 DNH 001
Jane Coplan, Warden
New Hampshire State Prison, et al.
_____

### ORDER

_____Petitioner Randy Lavallee is currently serving a sentence at the New Hampshire State Prison for Men ("NHSP").  In this action, Lavallee seeks a federal writ of habeas corpus claiming that the New Hampshire state courts improperly refused him relief after determining that certain exculpatory evidence was not disclosed timely in his criminal case.  Lavallee argues in his petition that the state court decisions are contrary to clearly established federal law under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

The Respondent in this action is Jane Coplan, NHSP Warden.[1]

_____

[1]The New Hampshire Attorney General was served as an additional Respondent.  Under 28 U.S.C. § 2252, the state attorney general must be provided notice prior to a hearing on a petition for a writ of habeas corpus, but need not file an answer.  See Advisory Committee Notes to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts

Respondent filed a motion for summary judgment on Lavallee's petition under Rule 11 of the Rules Governing § 2254 Cases and Rule 56 of the Federal Rules of Civil Procedure. Respondent contends that the record demonstrates that there is no genuine issue of material fact, and that she is entitled to judgment as a matter of law. Lavallee filed an objection.

Based upon my review of the parties' submissions, I find that the State of New Hampshire (the "State") was responsible for a violation of Lavallee's constitutional right to discover exculpatory evidence. I further find the Court may not determine whether there is a reasonable probability that had the exculpatory evidence been disclosed timely the result of Lavallee's criminal trial would have been different without reviewing the entire state court record. Accordingly, for the reasons set forth below, Respondent's motion for summary judgment is denied.

## Background

When Lavallee's stepdaughter, Alicia, was sixteen years old, she reported to the police that Lavallee regularly molested her when she was between the ages of twelve to fourteen years old.

("Rules Governing § 2254 Cases").

2

The State commenced a criminal investigation against Lavallee and referred the matter for investigation to the New Hampshire Department of Health and Human Services, Division of Children, Youth and Families ("DCYF"). DCYF instituted an abuse and neglect proceeding against Alicia's mother. DCYF placed Alicia in foster care and remained in contact with Alicia through the time of Lavallee's criminal trial.

Lavallee was indicted by a grand jury on multiple counts of sexual assault. Prior to trial in the Hillsborough County Superior Court, Lavallee moved for a court order requiring DCYF to disclose its records pertaining to Alicia. Lavallee contended that it was likely that the records contained exculpatory evidence. The trial court agreed with Lavallee and ordered that the entire DCYF file be disclosed to the parties. See Tr. of Hr'g on Pending Mot., Hillsborough County Super. Ct. (Lynn, J.), Jan. 28, 1998, at pp. 32-33. The trial court justice stated at the hearing on Lavallee's motion, "I'll leave it to you, Mr. Harding [the prosecutor], to contact [DCYF]; and I'll issue an order saying that they turn that file over to the parties . . . ." Id. DCYF forwarded the file to the prosecutor's office, which provided the file to the defense.

The criminal case against Lavallee was tried before a jury over five days in February 1998. Alicia was the State's primary witness. The defense used portions of the DCYF file during cross-examination. Following the close of evidence, while the jury was deliberating, a DCYF employee notified the prosecutor that some records from the DCYF file were omitted when the file was originally turned over to the prosecutor's office. The undisclosed records consisted of 39 pages of typed and handwritten notes detailing contacts between a DCYF caseworker and Alicia, her family, and foster-care providers beginning shortly after the accusations against Lavallee were made and continuing through the time of trial. The prosecutor promptly informed the defense and the trial court of the omitted evidence.

After reviewing the newly produced DCYF records, Lavallee's counsel moved for dismissal of the indictments based on the Supreme Court's decision in Brady v. Maryland. The defense argued that the undisclosed records contained impeachment evidence that supported the defense theory that Alicia fabricated the allegations against Lavallee. After a hearing, the trial court denied Lavallee's motion. The trial court analyzed Lavallee's arguments under Brady v. Maryland and State v. Laurie,

4

139 N.H. 325, 653 A.2d 549 (1995), and made the following rulings on the record:

> Well, first of all, I don't think that -- [DCYF] is an agent of the State for purposes of the <u>Brady</u> rule in this case. So for that reason alone, I don't think that your request would have any merit. Secondly, I don't think that this material rises to the level of <u>Brady</u> material which would make a reasonable probability of a different result, . . . . I don't think the things you've pointed to rise to the level of material necessary to meet a <u>Brady</u> -- the <u>Brady</u> test of reasonable probability of a different result. By and large, the material is cumulative and really doesn't add a heck of a lot with regard to . . . what is already in the evidence. And the other matters you relate to, they're, in my opinion, not so weighty as to produce a reasonable probability of a different result if there were a guilty verdict on one or more of the charges. So the motion is denied.

Tr. of Jury Trial (Day 5), Hillsborough County Super. Ct. (Hollman, J.), Feb. 12, 1998, at pp. 21-22. Lavallee was convicted on all charges except on a charge of second-degree assault, on which he was acquitted.

On April 20, 1998, Lavallee filed a <u>pro se</u> motion to set aside the verdict. The trial court denied the motion on November 2, 1998 following a two-day hearing. Lavallee was then sentenced to serve 22 and ½ to 45 years at NHSP.

Lavallee filed an appeal in the New Hampshire Supreme Court. On November 22, 2000, the court affirmed the convictions.

Lavallee filed a motion for reconsideration of that decision, but the court denied the motion on January 31, 2001.

On February 6, 2001, Lavallee filed a motion for a new trial in the trial court. The trial court denied the motion after a hearing on April 13, 2001. The trial court denied Lavallee's motion to reconsider that decision on May 25, 2001. The New Hampshire Supreme Court declined to accept an appeal on Lavallee's motion for a new trial on July 17, 2001.

Lavallee filed his petition for a federal writ of habeas corpus on April 16, 2002.

<u>Standard of Review</u>

Summary judgment is appropriate in a habeas proceeding when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. <u>See</u> <u>id.</u> at 248.

Lavallee's petition is subject to the standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), P.L. No. 104-132, 110 Stat. 1214 (1996).  Under the AEDPA, the federal courts may not grant a writ of habeas corpus to a state prisoner with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2002).

Lavallee contends that this Court should give his federal claim de novo review because the New Hampshire Supreme Court did not separately address the merits of that claim.  On direct appeal, the court considered Lavallee's arguments under Part I, Article 15 of the New Hampshire Constitution.[2]  The court stated:

---

[2]Part I, Article 15 of the New Hampshire Constitution is entitled Right of Accused.  The Article provides in relevant part:

> Every subject shall have a right to produce all proofs that may be favorable to himself; to meet the witnesses against him face to face, and to be fully heard in his defense, by himself, and counsel.  No subject shall be arrested, imprisoned, despoiled, or deprived of his

"'Because Part I, Article 15 of the New Hampshire Constitution is at least as protective of the defendant's rights as the Due Process Clause of the Fourteenth Amendment, . . . we do not engage in a separate federal analysis.'" State v. Lavallee, 145 N.H. 424, 427, 765 A.2d 671, 672-673 (2000) (quoting State v. Marti, 143 N.H. 608, 611, 732 A.2d 414, 417 (1999)). Thus, the court expressly indicated that it did not conduct a separate analysis of Lavallee's federal claim.

If the New Hampshire Supreme Court were the only state court that considered Lavallee's federal claim, I would agree with his argument that this Court should give his claim de novo review. It is clear, however, that the trial court adjudicated the merits of Lavallee's claim. The trial court held a hearing on Lavallee's Brady claim during which it analyzed the merits of the claim and made findings on the record. The trial court's decision on Lavallee's claim was an adjudication on the merits to

---

property, immunities, or privileges, put out of protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land.

N.H. Rev. Stat. Ann., Constitution of New Hampshire, Part I, Art. 15 (Equity Follows The Law Publishing Co. 1988 ed.).

which this Court must give deference under 28 U.S.C. § 2254(d).[3]

Discussion

I.  Supreme Court Precedent on Disclosure of Exculpatory Evidence

In Brady v. Maryland, the Supreme Court found that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. It is well-settled that impeachment evidence must be disclosed to the defense pursuant to Brady. United States v. Bagley, 473 U.S. 667, 676 (1985); Giglio v. United States, 405 U.S. 150, 154 (1972). It is also well-settled that a Brady violation may occur in cases of a prosecutor's inadvertent failure to disclose. Strickler v. Greene, 527 U.S. 263, 282 (1999); see also, United States v. Agurs, 427 U.S. 97, 110 (1976) (the constitutional obligation to disclose under Brady is not measured by the moral culpability or willfulness of the prosecutor). Accordingly, it is of no consequence to Lavallee's federal claim that the State

---

[3]It should also be noted that for purposes of the federal court's review under § 2254, a factual determination made by the state court is presumed to be correct and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e).

did not act in bad faith in failing to disclose impeachment evidence until after the jury began deliberating.

The state's obligation to produce exculpatory evidence is not limited to the evidence in the prosecutor's possession. In Kyles v. Whitley, 514 U.S. 419 (1995), the Supreme Court found that:

> the prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, see Brady, 373 U.S., at 87, 83 S. Ct., at 1196-1197), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

514 U.S. at 437-438. The Court's earlier decision in Pennsylvania v. Ritchie, 480 U.S. 39, 57-58 (1987), is consistent with the broad language used in Kyles. In Ritchie, the Court indicated that records held by a state protective service agency may be the subject of a Brady violation. The Court recognized that the defendant's right to due process had been violated based on the agency's refusal to turn over material records to the defense in response to the defendant's subpoena. 480 U.S. at 57-58. The Court found that due process outweighed the state's interest in keeping the records confidential, and the Court

10

mandated disclosure of the records to the defendant after <u>in camera</u> review by the court for materiality. <u>Id.</u> at 58.

In 1999, the Supreme Court clarified the requirements of a <u>Brady</u> violation in <u>Strickler v. Greene</u>. There the Court found that three elements must be established before a defendant can show that a true <u>Brady</u> violation has occurred: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. at 281-82.

II. <u>Requirements of 28 U.S.C. Section 2254(d)(1)</u>

This Court must consider Lavallee's <u>Brady</u> claim in light of the requirements of the AEDPA. Under the AEDPA, Lavallee must demonstrate that the trial court's ruling on the scope of the State's duty to disclose exculpatory evidence was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." <u>See</u> 28 U.S.C. § 2254(d)(1). On review of his claim, this Court must independently consider the "contrary to" and "unreasonable application" clauses in § 2254(d)(1). "A federal habeas court may issue the writ under the 'contrary to' clause if

11

the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, --, 122 S. Ct. 1843, 1850 (2002) (citing Williams v. Taylor, 529 U.S. 362, 406 (2000)). The federal habeas court may grant relief under the "unreasonable application" clause if "the state court correctly identifies the governing legal principle" from the Supreme Court's decisions, "but unreasonably applies it to the facts of the particular case." Bell, 122 S. Ct. at 1850; Williams, 529 U.S. at 407-409.

In considering Lavallee's motion to dismiss the indictments, the trial court ruled that DCYF is not an agent of the State for purposes of the Brady rule. On appeal, the New Hampshire Supreme Court followed the trial court's lead with respect to its determination that DCYF is not "the State" under New Hampshire law. That court found that the prosecutor's duty to produce exculpatory evidence "extends only to evidence in the prosecutor's possession or in the possession of a law enforcement agency charged with the investigation and presentation of the case." Lavallee, 145 N.H. at 427, 765 A.2d at 673. According to

12

the court, the reason for imputing the police's knowledge to the prosecution arises from the special relationship that exists between the prosecution and law enforcement in investigating and prosecuting criminal conduct.  Id., citing 1 R. McNamara, New Hampshire Practice, Criminal Practice and Procedure §§ 12, 14 (3d ed. 1997).[4]  The court found that "there is no similar justification for imputing DCYF's knowledge of the existence of possibly exculpatory evidence to the prosecution."  Id.

The state courts' rulings that the State had no duty to produce the suppressed DCYF records is "contrary to" clearly established federal law because the state courts applied a rule that is different from the governing law set forth in Supreme Court precedent.  In Pennsylvania v. Ritchie, the Supreme Court clearly indicated that the type of evidence at issue here may be the subject of a Brady violation.  480 U.S. at 57-58.  In discussing the state's duty to disclose, the Court made no distinction between the prosecution and a state protective service agency that possessed exculpatory evidence sought by the defense.  Rather, the Court recognized that the defendant's right to due process had been violated based on the state agency's

_____

[4]The sections of the New Hampshire Practice series cited by the New Hampshire Supreme Court do not discuss any federal law.

13

refusal to turn over material records in response to the defendant's subpoena. <u>Ritchie</u>, 480 U.S. at 57-58. The Court found that due process required disclosure of the records to the defendant after <u>in camera</u> review by the court for materiality. <u>Id.</u> at 58.[5]

The limitation that the state courts imposed on the State's duty to disclose exculpatory evidence contradicts the broad language used by the Supreme Court in <u>Kyles v. Whitley</u>. The Court found in <u>Kyles</u> that: "the prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." 514 U.S. at 437-438. The Court's use of the phrases "any favorable evidence known to others" and "including the police" shows that a state's obligation to produce exculpatory evidence may extend beyond law enforcement.

The policy justification behind the <u>Brady</u> rule is to ensure

---

[5]In <u>State v. Gagne</u>, 136 N.H. 101, 105, 612 A.2d 899, 901 (1992), the New Hampshire Supreme Court adopted the same standard for disclosure of DCYF records under New Hampshire law as the Supreme Court set forth <u>Ritchie</u>. The New Hampshire Supreme Court noted in <u>Gagne</u> that the issue raised by the defendant in <u>Ritchie</u> was remarkably similar to the issue before the court and that the "CYS file" in <u>Ritchie</u> was similar to the file at issue in <u>Gagne</u>. <u>Id.</u> at 105, 612 A.2d at 901. It is not clear from the record, but the New Hampshire Supreme Court may have overlooked <u>Gagne</u> when it considered Lavallee's direct appeal.

that a miscarriage of justice does not occur.  <u>United States v. Bagley</u>, 473 U.S. at 675; <u>see also</u>, <u>Strickler v. Greene</u>, 527 U.S. at 281 (finding that the American prosecutor has a special role to play in ensuring that justice is done in criminal cases).  In <u>Ritchie</u>, the prosecutor's knowledge of the records possessed by the state agency, or lack thereof, played no part in the Court's decision.  The justification discussed by the New Hampshire Supreme Court for limiting the State's obligation to disclose exculpatory evidence -- focusing on the special relationship between the prosecutor and law enforcement -- differs from the Supreme Court's focus on preventing a miscarriage of justice. While the New Hampshire Supreme Court's decision in <u>State v. Lavallee</u> is binding New Hampshire precedent, the standard that it applies to the scope of the State's duty to disclose exculpatory evidence is inconsistent with the federal standard.

To be clear, I do not find that the Supreme Court held in <u>Pennsylvania v. Ritchie</u> and <u>Kyles v. Whitley</u> that prosecutors have an obligation to survey every state agency to determine whether the agencies possess potentially exculpatory evidence. Where as in this case, however, the state has a statute pertaining to the disclosure of confidential state records, and

the trial court has ordered the prosecutor to produce those records to the defense, the disclosure obligations of <u>Brady v. Maryland</u>, and its progeny, apply.

I find that the trial court's decision that the prosecutor, and therefore the State, had no duty under <u>Brady</u> to produce the DCYF records that were suppressed in Lavallee's case, despite the trial court's pretrial order requiring production, is contrary to federal law as decided by the Supreme Court of the United States. I further find, therefore, that Lavallee has satisfied the conditions of § 2254(d)(1) necessary to proceed further with this action.

III. <u>Untimely Disclosure of Material Evidence</u>

The Respondent argues that even if the State had a duty to produce the suppressed DCYF records to Lavallee, the State fulfilled its duty by producing those records to Lavallee before his criminal case concluded. Respondent contends that Lavallee's claim of prejudice is without merit because he chose to not ask for a mistrial or to move to reopen the case for further cross-examination. Lavallee responds that the State's disclosure, during the jury's deliberations, was in effect a nondisclosure.

Lavallee's argument invokes a "well-established extension of

16

[the <u>Brady</u>] rule prohibiting unwarranted delays in the disclosure of material evidence." <u>United States v. Lememmer</u>, 277 F.3d 579, 584 (1st Cir. 2002) (<u>citing</u> <u>United States v. Ingraldi</u>, 793 F.2d 408, 411-12 (1st Cir. 1986)). Delayed disclosure of exculpatory evidence by the prosecution does not automatically entitle a defendant to a new trial. In <u>United States v. Osorio</u>, 929 F.2d 753, 757 (1st Cir. 1991), the court held that in cases involving delayed disclosures, "the critical inquiry is . . . whether the tardiness prevented defense counsel from employing the material to good effect." <u>Id.</u>; <u>see also</u>, <u>Ingraldi</u>, 793 F.2d at 412 (the effect of a delayed disclosure "depends on the extent the defendant actually managed to use the information in the files despite the delay.").

I find that Lavallee was denied any opportunity to use the untimely disclosed evidence effectively. At the point of the trial during which the State produced the evidence, the trial court had already given its jury instructions and the jury had retired to consider the evidence. I find it unreasonable to suggest that Lavallee should have asked the trial court to re-open the evidence at that point for additional cross-examination. Respondent has not cited any case where a trial court has done so

17

under similar circumstances.

I further find that Lavallee did not waive his Brady claim by asking the trial court to dismiss the indictments in response to the State's untimely disclosure. In denying a defendant's request for a new trial, the court in Osorio found it significant that defense counsel "made no objection, motion for dismissal, or motion for continuance, either at the time he first became aware of [the delayed disclosure] or the next day when it was brought to the court's attention." 929 F.2d at 758. Thus, the court indicated that making a motion to dismiss is one way to preserve an objection for appeal. And moreover, the New Hampshire Supreme Court did not find that Lavallee waived his Brady claim when that court considered his direct appeal. I find, therefore, that Lavallee adequately preserved his Brady claim by making a motion to dismiss in the trial court.

IV. Materiality of Suppressed Evidence

Before Lavallee is entitled to any relief under Brady based on the untimely disclosure of exculpatory evidence, he must demonstrate that the suppressed evidence was material. To meet the materiality threshold, Lavallee must show that "there is a

18

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. at 280 (quoting United States v. Bagley, 473 U.S. at 682). In the instant case, the trial court found that the suppressed evidence was not material because it was, in that court's view, largely cumulative of evidence that was presented to the jury. On direct appeal, the New Hampshire Supreme Court did not decide the materiality issue because the court found that the prosecution had no duty to disclose the evidence.

The DCYF file has not been submitted to this Court for review. Absent that file, I cannot determine whether Lavallee meets the Brady materiality standard. And since the trial court ruled that the suppressed evidence in this case was not material under Brady, this Court must also determine whether the trial court's materiality ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under 28 U.S.C. § 2254(d)(1). Accordingly, in order to determine whether Lavallee meets these requirements for obtaining relief, I must review the DCYF file in light of the entire state court record.

19

## Conclusion

Respondent's motion for summary judgment (document no. 10) is denied. The Respondent shall submit to the Court within 30 days any remaining state court records that have not been previously submitted in these proceedings. A copy of those records shall be produced to Lavallee's counsel, who is ordered to maintain the confidentiality of the DCYF records. The DCYF records that are submitted to the Court shall be filed under seal.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:    January 7, 2003

cc:      Christopher M. Johnson, Esq.
         Jonathan V. Gallo, Esq.