# United States Court of Appeals
## For the First Circuit

No. 04-1160

RANDY LAVALLEE,

Petitioner, Appellant,

v.

JANE COPLAN, Warden, New Hampshire State Prison,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE
[Hon. James R. Muirhead, U.S. Magistrate Judge]

Before

Selya, Circuit Judge,
Porfilio, Senior Circuit Judge,[*]
and Lynch, Circuit Judge.

Christopher M. Johnson for appellant.

Jonathan V. Gallo, Assistant Attorney General, with whom Peter W. Heed, Attorney General, was on brief, for appellee.

July 8, 2004

[*]Of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**.  Randy Lavallee appeals from the denial of his habeas corpus petition under 28 U.S.C. § 2254.

In early 1998, Lavallee was convicted in New Hampshire state court of multiple counts of sexual assault against his step-daughter, who was between the ages of twelve and fourteen at the times of the assaults.  He was sentenced to twenty-two and a half to forty-five years confinement in New Hampshire state prison.

Before his state criminal trial started, Lavallee asked the state court judge to order the disclosure of files concerning his step-daughter that were in the possession of the New Hampshire Department of Health and Human Services, Division of Children, Youth, and Families (DCYF).  DCYF had initiated abuse and neglect proceedings against Lavallee and neglect proceedings against the step-daughter's mother (Lavallee's wife) after the step-daughter had made allegations of sexual abuse by Lavallee to the police. DCYF files are confidential under New Hampshire's Child Protection Act, N.H. Rev. Stat. Ann. § 169-C:25, III, and absent a court order, even the prosecution may not access them, see State v. Gagne, 612 A.2d 899, 899-900 (N.H. 1992) ("neither the prosecution nor the defendant ha[s] access to the DCY[F] file").  The court allowed Lavallee's motion, and DCYF provided the file materials to the prosecutor, who gave them to the defense.

After the jury began deliberations, but before it reached a verdict, a DCYF employee notified the prosecutor that some

-2-

portions of the step-daughter's DCYF files had inadvertently been omitted when the materials had been produced earlier. The omitted materials detail a DCYF caseworker's contacts with the step-daughter, her family, and her foster-care providers beginning shortly after the accusations against Lavallee were made and continuing through the time of trial. The prosecution immediately gave the new materials to the defense, and before a verdict was reached, Lavallee moved to dismiss all of the charges because of the late production of the documents. The trial judge reviewed the new file materials that the defense said were pertinent, heard arguments, and denied the motion.

The belatedly-produced materials from the DCYF files now form the heart of Lavallee's habeas corpus claim. Lavallee argues that the failure to disclose the complete file materials violated the rule of Brady v. Maryland, 373 U.S. 83 (1963), which requires the government to produce to defendants exculpatory and impeachment evidence that is within its custody, possession, or control, id. at 87; see also Giglio v. United States, 405 U.S. 150, 154 (1972). To constitute a Brady violation, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either whether willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263,

-3-

281-82 (1994); United States v. Josleyn, 206 F.3d 144, 153 (1st Cir. 2000).

For purposes of the analysis here, we can assume that the omitted file materials were favorable to Lavallee and focus on the state court's handling of the second and third components of the test. The second component is present only if the exculpatory or impeaching evidence at issue (here, the omitted file materials) is the type of evidence covered by the Brady rule; exculpatory or impeaching evidence is so-called "Brady material" only if it is within the government's custody, possession, or control. See Josleyn, 206 F.3d at 151-53; see also Strickler, 527 U.S. at 280-81. The third component captures the so-called "Brady materiality requirement" and is satisfied where there is a reasonable probability that the evidence would have changed the result. See Josleyn, 206 F.3d at 151-52; see also Strickler, 527 U.S. at 280.

If Lavallee's Brady claim "was adjudicated on the merits in State court proceedings," then we must accept the state's legal ruling on that claim unless it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). If his claim was not adjudicated on the merits in the state court proceedings, then we review the claim de novo. See Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003); Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).

-4-

The Brady claim formed the basis of Lavallee's motion to dismiss to the state trial court. As noted, the state trial judge reviewed the newly-produced DCYF materials and denied the motion for dismissal. The trial judge ruled that the materials were not within the scope of Brady, and, in any event, that they did not meet Brady's materiality requirement. The late production of the DCYF materials then became one of the two bases for Lavallee's direct appeal to the New Hampshire Supreme Court. State v. Lavallee, 765 A.2d 671, 672 (N.H. 2000). That court also rejected the Brady claim. The court held that the DCYF files were not the type of evidence covered by Brady-type disclosure rules under the New Hampshire Constitution, because neither the investigating law enforcement agency nor the prosecution was in possession of them. Id. at 672-73. The court also implicitly concluded that the evidence was not covered under the Brady rule, reasoning that the protections concerning Brady material under the New Hampshire Constitution are at least as broad as those under the federal constitution. Id. As a result, the New Hampshire Supreme Court did not reach the issue of Brady materiality, unlike the state trial judge.

In April 2002, Lavallee filed a federal habeas corpus petition. It was heard by a magistrate judge in the United States District Court for the District of New Hampshire. Contrary to the New Hampshire trial court and the New Hampshire Supreme Court, the

federal court determined that the DCYF files were within the scope of <u>Brady</u>.  <u>Lavallee</u> v. <u>Coplan</u>, 239 F. Supp. 2d 140, 145-47 (D.N.H. 2003).  In a subsequent order, the district court turned to the questions of whether the files met the standard for materiality under <u>Brady</u> and whether the state trial court's decision that the undisclosed evidence was not material was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under 28 U.S.C. § 2254(d)(1).  The federal court reviewed the state court record and determined that the DCYF files did not meet the <u>Brady</u> materiality requirement.  Accordingly, it denied the petition.

Under conventional <u>Brady</u> doctrine, the New Hampshire Supreme Court and trial court were correct in their respective conclusions that the DCYF files did not trigger a duty under <u>Brady</u> because they were not within the custody, possession, or control of the prosecution.  Whether we engage in deferential review or, as Lavallee seeks, de novo review, the outcome would be the same:  the DCYF files are not the type of evidence covered under conventional <u>Brady</u> doctrine.  <u>See</u> <u>United States</u> v. <u>Bender</u>, 304 F.3d 161, 163-64 (1st Cir. 2002) (<u>Brady</u> doctrine does not require a prosecutor to seek out and disclose exculpatory or impeaching material not in the prosecution's possession).  The files were self-evidently not within the custody or possession of the prosecution, so the question becomes whether they were nonetheless within the

-6-

prosecutor's control. There is no claim that the prosecutor had any reason to think that the original files turned over from DCYF were incomplete. And while prosecutors may be held accountable for information known to police investigators, Kyles v. Whitley, 514 U.S. 419, 437-38 (1995), DCYF is neither the police nor the equivalent of the police in assisting the prosecution. DCYF was not the prosecuting agency and is independent of both the police department and the prosecutor's office. Indeed, in its decision on Lavallee's direct appeal, the New Hampshire Supreme Court held that DCYF shared no special relationship with the prosecutor or the police.[1] Lavallee, 765 A.2d at 673.

There is a wrinkle, though, and it lies in the Supreme Court's 1987 opinion in Pennsylvania v. Ritchie, 480 U.S. 39 (1987). In Ritchie, a defendant in state criminal court sought the production of files from a state child protection agency, equivalent to DCYF. 480 U.S. at 43-44. The agency pointed to a state statute that made its files confidential, subject to certain exceptions, and refused to produce the files, which concerned the alleged victim of sexual abuse by the defendant. Id. The trial

---

[1]     Lavallee argues that there are a number of "connections" between DCYF and the police and prosecution and that those connections support treating DCYF files as Brady material. Lavallee points out, for example, that police officers had some contact with DCYF and with the step-daughter while she was in foster care and that members of the prosecutor's office had some contact with DCYF workers. However, the New Hampshire Supreme Court clearly resolved the issue against him and that determination is entirely sound.

court judge refused to order the disclosure of the files, the defendant was convicted, and he appealed. Id. at 44-45. An intermediate state appellate court vacated the conviction and remanded on the ground that the failure to disclose the agency files violated due process. Id. at 45. The state appealed, and the Supreme Court of Pennsylvania agreed that the conviction had to be vacated and the case remanded to determine if a new trial was necessary in light of the information in the agency files. Id. at 46. The court also held that the defendant was entitled to review the entirety of the agency's files to search for any useful evidence. Id. On review of that ruling, the U.S. Supreme Court noted the government's duty "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment," citing United States v. Agurs, 427 U.S. 97 (1976), and Brady. 480 U.S. at 57. The Court did not ask the question that usually begins the Brady analysis -- namely, whether the agency file at issue was within the custody, possession, or control of the prosecutor. The Court upheld the vacatur and remand and held, under the Due Process Clause, that the defendant was entitled to have the agency file reviewed by the trial court to determine whether it contained information "that probably would have changed the outcome of his trial." Id. at 58. However, the Court reversed the state supreme court's ruling to the extent that

-8-

it allowed the defendant immediate access to the entirety of the agency's files.  <u>Id.</u> at 61.

Because of our sense that there is some ambiguity about the relationship between <u>Ritchie</u> and <u>Brady</u>, we would be very hesitant to conclude, as the magistrate judge did, that the New Hampshire Supreme Court opinion, which analyzed the <u>Brady</u> claim in classic terms, was nonetheless "contrary to" the holding in <u>Ritchie</u> or that the particular doctrine invoked here was "clearly established" as a <u>Brady</u> doctrine.  Moreover, petitioner did not cite <u>Ritchie</u> to the New Hampshire Supreme Court on his appeal; he cited it for the first time in his motion to that court for reconsideration, so he may not have sufficiently raised it in state court.  In any case, the answer to those questions need not be resolved because Lavallee's petition fails for other reasons.

<u>Ritchie</u> required that a state judge review the agency file and determine whether it contained information that probably would have changed the outcome of defendant's trial.  That was done here.  The trial judge here concluded, pre-verdict, that even if the documents were within the scope of <u>Brady</u>, there was no reasonable probability of a different result if they had been produced earlier (i.e., they failed the <u>Brady</u> materiality test).  The court accepted the defense argument that the additional documents were pertinent in two ways to the defense theory that the victim had fabricated her allegations of abuse against her step-

father in order to be with her boyfriend, Brad. Defense counsel, acknowledging that the victim had already testified that she was still in love with Brad and still maintaining contact with him at the time of trial, argued that the new documents would support the defense theme that her strong, ongoing relationship with Brad had colored her testimony and led to false accusations against her father. He also argued that some of the notes in the newly-produced DCYF materials could be used to undercut the step-daughter's credibility as to her testimony about whether she had made certain phone calls to Brad and whether she had told her mother about the alleged abuse. The trial judge, citing <u>Brady</u>, ruled that "[b]y and large, the material is cumulative and really doesn't add a heck of a lot with regard to the Brad issue beyond what is already in evidence." As to the impeachment value of the evidence, the trial judge found it to be "not so weighty as to produce a reasonable probability of a different result if there were a guilty verdict on one or more of the charges." Even were those sound determinations before us on direct review and not on habeas, we would affirm. The new material, which was largely cumulative of what the jury had already heard, would have added little to the defense theme.

We **affirm** the denial of habeas corpus.