People v Dennis (2025 NY Slip Op 52005(U))

[*1]

People v Dennis

2025 NY Slip Op 52005(U)

Decided on December 15, 2025

Supreme Court, Kings County

King, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 15, 2025
Supreme Court, Kings County

The People of the State of New York

against
Iking Dennis, Defendant.

IND-73686-23

Edward H. King, J.

Iking Dennis (hereinafter "defendant") is charged with Assault in the First Degree under Penal Law Section 120.10(1) and other related charges listed in the indictment. Defendant, by papers dated May 27, 2025, moved for an order (1) dismissing the indictment, (2) deeming the People's certification of compliance invalid, and dismissing the indictment pursuant to CPL §§ 30.30 and 210.20(1)(g). By papers dated June 30, 2025, the People opposed.
I. Factual and Procedural Background
Defendant was charged by Indictment no. 73686-23 with two counts of assault in the first degree, two counts of attempted assault in the first degree, assault in the second degree, two counts of attempted assault in the second degree, assault in the third degree, criminal possession of a weapon in the fourth degree, menacing in the second degree, menacing in the third degree and harassment in the second degree.
The allegation is that on June 9, 2023, at approximately 2:50 p.m., in Brooklyn, the defendant attacked the complainant with an unknown sharp object, slicing the complainant multiple times about the face and shoulder. The complainant was transported to Kings County Hospital and received approximately twenty (20) stitches for lacerations to her face and shoulder.
Detective Edwin Gonell (hereinafter "Gonell"), from the Brooklyn Transit Robbery Squad, as part of his investigation into the incident, collected video surveillance, spoke with complainant and other potential witnesses. Gonell created a double-blind photo array after developing a suspect from his investigation. Detective Francisco Pina administered the photo-array to the complainant, and she identified the defendant and signed that photo array. This completed array was provided in discovery on June 26, 2023, by Assistant District Attorney Colby Levin (hereinafter "ADA Levin").
On June 12, 2023, the defendant was arrested on an unrelated matter, and the same day subsequently arrested for the instant matter. On June 14, 2023, he was arraigned on a criminal court complaint in Kings County Criminal Court, at the time he was represented by the Legal [*2]Aid Society, and bail was set.
On June 16, 2023, ADA Levin had Johanna Marquez, a witness present at the incident, was shown the photo-array, and identified a different person as the perpetrator, and not the defendant.
As a result, ADA Levin did not have Ms. Marquez testify in the grand jury. Following the grand jury presentation, the defendant was indicted for Assault in the First Degree, PL § 120.10(1) and other related charges. 
On June 26, 2023, ADA Levin served and filed a Notice and Disclosure Form ("NDF") and in the Notice of Identifications section included the following statements:
"On 6/13/23, a photo array was conducted with an eyewitness named Johanna Margues (sic). The array was created by Detective Edwin Gonell and administered by Detective Investigator Joseph Catarina. Ms. Marquez chose the photo of someone other than the defendant."
Following indictment, the case was transferred to ADA Daniel Wolf. On July 14, 2023, the defendant was scheduled to be arraigned on the indictment. At the appearance, he requested a new attorney, and the matter was adjourned to August 29, 2023 for arraignment.
On August 4, 2023, ADA Wolf served and filed a Certificate of Compliance ("COC") and Statement of Readiness ("SOR"). On August 29, 2023, new counsel Calvin Simons was appointed to represent the defendant. Mr. Simons requested inspection of the grand jury minutes, and the matter was adjourned to October 12, 2023, for a decision on the defendant's motion. The grand jury minutes were found sufficient on October 12, 2023, and the matter was adjourned to November 13, 2023, for pre-trial conference in Part 17. On November 13, 2023, the case was not called and administratively adjourned to December 12, 2023, in Part 33.
On December 12, 2023, Mr. Simons requested a mental examination of his client pursuant to CPL §730. An examination was ordered, and the matter was adjourned to January 24, 2024 for 730 results. On that date, the results were not available, and the matter was adjourned to March 13, 2024, for the same purposes.
On March 13, 2024, the defendant was found fit for trial, and at that appearance he requested new counsel. The matter was adjourned to March 18, 2024, for assignment of new counsel. On that date, Mr. Craig Newman was assigned counsel for defendant. The matter was adjourned to April 17, 2024, for a conference. At that appearance, Mr. Newman requested additional time to review the discovery, and the matter was adjourned to June 3, 2024, for a conference. On June 3, 2024, the matter was administratively adjourned to June 17, 2024.
On June 17, 2024, Mr. Newman waived defendant's appearance, indicated he was seeking a private psychiatric examination pursuant to CPL § 730 and the matter was adjourned to September 9, 2024, for the supplemental 730 examination results. On that date, Mr. Newman [*3]indicated the client was again found fit. He reaffirmed the COC filed by previous counsel, and stated he received all the discovery and stands ready for trial. The matter was adjourned to October 16, 2024, for Dunaway, Huntley and Wade hearing.
On October 16, 2024, the People answered not ready and requested twelve (12) days. The hearing was adjourned to November 12, 2024. On that date, both the People and defense answered ready in Part 33 and the matter was sent forthwith to Part 17 for hearings. Hearings commenced and were adjourned to December 10, 2024, to continue. 
On December 10, 2024, during the hearing Detective Donell on cross examination testified that the photo array he made was shown to someone other than the complainant when he came to court, at which point the witnesses identified someone other than the defendant. 
The witness was excused and the court engaged in a discussion with the parties about the potentially missing discovery, and the court ordered the People to provide information surrounding the identification procedure and the missing material. The instant motions followed.
II. Conclusions of Law
A. Motion to Dismiss indictment based upon Brady violation.
Defendant claims that the Brady violations which occurred in this case were so egregious as to warrant dismissal of the indictment.
The constitutional guarantee of due process provided in Brady is the principle that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution" (Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.E.2d 215; see also United States v Agurs, 427 U.S. 97, 110, 96 S.Ct. 2392, 49 L.Ed.2d 342). This principle "exists to prevent miscarriages of justice," and "imposes on the People the duty to disclose to the defense evidence in its possession that is favorable to the accused" (People v. Steadman, 82 NY2d 1, 7 603 N.Y.S.2d 382, 623 N.E.2d 509).
Under Brady v Maryland, the prosecution is required to disclose information that is both favorable to the defense and material to either defendant's guilt or punishment (see Brady v Maryland, 373 U.S. 83, 87 [1963]; People v Vilardi 76 NY2d 67 [1990]). The duty to disclose includes impeachment evidence as well as exculpatory evidence (see Strickler v Greene, 527 U.S. 263, 280 [1999]). "The rule applies regardless of good or bad faith of the prosecutor, for its purpose is not to punish misconduct but to insure that the accused receives a fair trial" (People v Bryce, 88 NY2d 124, 129 [1996]). 
The underlying principle of Brady which, as so eloquently stated by Justice Douglas, "is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the [*4]accused" (Brady, 373 U.S. at 87, 83 S.Ct. 1194).
To make out a successful Brady claim, "a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Fuentes, 12 NY3d 259, 263 [2009], citing Strickler, 527 US at 281-282; see People v Hayes, 17 NY3d 46, 50 [2011]; People v LaValle, 3 NY3d 88, 109-110 [2004]).
As to the first prong of the analysis, it is undisputed that the purported Brady material was favorable to the defendant for the purposes of impeaching Detective Gonell's testimony, among other things. 
Under Brady's second component, the People "suppressed" the favorable evidence, "either willfully or inadvertently" (see Strickler, 527 US at 282). Exculpatory or impeaching evidence is subject to Brady disclosure only if it is within the prosecution's custody, possession, or control (see People v Santorelli, 95 NY2d 412, 421 [2000]; see People v Wright, 86 NY2d 591, 596 [1995]; see also Lavallee v Coplan, 374 F3d 41, 43 [1st Cir 2004]). What constitutes "possession or control" for Brady purposes "has not been interpreted narrowly" (Santorelli, 95 NY2d at 421), and it is beyond cavil that "the government's duty to disclose under Brady reaches beyond evidence in the prosecutor's actual possession" (United States v Risha, 445 F3d 298, 303 [3d Cir 2006]; see Kyles, 514 US at 437-438; Santorelli, 95 NY2d at 421). Specifically, the duty "encompasses evidence 'known only to police investigators and not to the prosecutor' " (Strickler, 527 US at 280-281, quoting Kyles, 514 US at 438). As the Supreme Court explained in Kyles, in order to comply with Brady, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police" (Kyles, 514 US at 437).
Obviously exculpatory evidence must be turned over to the defense even in the absence of a specific request. (U.S. v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)). Moreover, the prosecutor should disclose it at the earliest possible moment. (People v. Hunter, 126 Misc 2d 13, 15, 480 N.Y.S.2d 1006, 1008 (Sup.Ct.1984)).
"Justice cannot be done if the prosecutor in withholding evidence, even for a brief period, casts himself in the role of an architect of a proceeding that does not comport with minimal standards of justice." (Id., citing Brady v Maryland, supra at 87—88, 1196—97).
Where discoverable evidence gathered by the prosecution or its agent is lost, the People have a heavy burden of establishing that diligent, good-faith efforts were made to prevent the loss (id.; see, also, United States v Augenblick, 393 U.S. 348, 355—356, 89 S.Ct. 528, 533—534, 21 L.Ed.2d 537). Otherwise, the Court of Appeals stated, sanctions will be imposed. (People v Kelly, 62 NY2d 516, 520 [1984]).
Regarding the last prong, in New York, where a defendant made a specific discovery request for a document, and the information was not disclosed, we measure the third prong of the [*5]materiality of the suppressed Brady material by considering whether there is a reasonable possibility that disclosure of the evidence would have changed the result of the proceedings (Vilardi, 76 NY2d at 77). In the absence of a specific request by defendant, materiality is established if there is a "reasonable probability" that the result (NY3d at 474) would have been different if the evidence had been disclosed—meaning " 'a probability sufficient to undermine the court's confidence in the outcome of the trial' " (People v Hunter, 11 NY3d 1, 5 [2008], quoting People v Bryce, 88 NY2d 124, 128 [1996]; see Kyles v Whitley, 514 US 419, 434 [1995]).
Here, the prosecutor didn't only "learn" of favorable evidence to the defendant, they produced it. And while the record supports that a disclosure was made in the original NDF, that does not eviscerate the obligation to produce that referenced material. Material which the People now assert, unequivocally, as lost or destroyed.
Hiding behind an NDF disclosure, and accompanying summary, the completeness of which no one will know, created an opportunity for mischief and mistake, and contributed significantly to the People's misfeasance in this case. Furthermore, there is no evidence to support a finding of a good faith effort by the People to avoid the loss of pertinent discoverable information. Indeed, its troubling that the only agency that ever possessed this material cannot account for its whereabouts.
Accordingly, the court finds the People failed to meet their obligation under Brady. 
B. Motion to Dismiss pursuant to CPL §245.50(1)
On January 1, 2020, newly enacted Article 245 of the CPL came into effect. Pursuant to CPL § 245.20(1), the defendant is entitled to automatic discovery of "all items and information that relate to the subject matter of the case and area in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." The statute further enumerates specific categories of material that are discoverable (see CPL § 245.20[1][a]-[u]). The prosecution is required to "make a diligent, good faith effort to ascertain the existence of material or information discoverable." (CPL § 245.20[2]).
Once the prosecution has provided the discovery required by CPL § 245.20(1), it must serve and file a certificate of compliance (CPL § 245.50). The filing of a "proper" certificate of compliance is a prerequisite to the prosecution being deemed ready for trial (see CPL § 245.50[3]; see People v Lobato, 66 Misc 3d 1230[A] [Crim. Ct. Kings Co. 2020]). The certificate of compliance must identify the items provided and state that "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (CPL § 245.50[1]). 
CPL § 245.50(4) requires that a party aware of a potential defect or deficiency in a COC, or supplemental COC, shall notify or alert the opposing party as soon as practicable (see CPL § 245.50 (4)[a]&[b]). Challenges to a COC must be addressed by motion "as soon as practicable." [*6]CPL 245.50(1) further provides no adverse consequence to the prosecution, or the prosecutor shall result from the filing of a COC in good faith, after having exercised due diligence, and making reasonable inquiries under the circumstances.
The prosecution bears "the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries before filing the initial COC [certificate of compliance] despite a belated or missing disclosure" (see People v. Bay, 41 NY3d 200 [2023]).
The court finds that the COC and SOR filed on August 4, 2023, by ADA Wolf was valid, as it was filed in good faith, after exercising due diligence, and was reasonable under the circumstances, notwithstanding the subsequent failure to produce the referenced material.
C. Motion to Dismiss pursuant to CPL §§ 30.30 and 210.20(1)(g)
Pursuant to CPL § 30.30(1), the applicable speedy trial period is determined by the highest offense charged in the accusatory instrument. Here, at least one of the offenses charged is a felony; thus, the People are required to state their readiness for trial within six months of the commencement of the criminal action, less any excludable time (CPL § 30.30[1][a]), in this case, 184 days. A "criminal action" commences with the filing of an accusatory instrument against a defendant in a criminal court, this includes the filing of all further accusatory instruments directly derived from the initial one, and terminates with the imposition of sentence of some other final disposition in a criminal court where the last accusatory instrument was filed in the case (CPL § 1.20[16]; see CPL § 1.20[17]]; People v. Osgood, 52 NY2d 37, 43 [1980] (the filing of the felony complaint commences the criminal action); see People v. Lomax, 50 NY2d 351, 355-356 [1980] (the point of commencement of an action for speedy trial purposes is the date on which the first accusatory instrument was filed)).
While People concede forty-two (42) days of chargeable speedy trial time, the court finds the People's statement of readiness to be valid and not illusory. Moreover, even though significant time has elapsed, the court finds the time between arraignment and this decision is not chargeable to the People. The court specifically finds that the adjournments were excusable as they resulted from administrative adjournments, 730 examinations and related reports, and defendant's requests for new counsel. As such, there is no speedy trial violation pursuant to CPL § 30.30.
D. Remedies
The source of sanctions and remedies for violations of CPL Article 245 discovery obligations is §245.80, which states the court shall impose a remedy or sanction that is appropriate and proportionate to the prejudice suffered by the party entitled to disclosure and that regardless of a showing of prejudice, the party entitled to disclosure shall be given reasonable time to prepare and respond to the new material. CPL 245.80(1).
CPL §245.80(2) outlines the available remedies, which ranges from issuing an order for discovery, to dismissal with the overarching mandate that the remedy comport with the defendant's right to present a defense.
Although the choice of "appropriate" action is committed to the sound discretion of the trial court, as a general matter the drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm done by the loss of evidence. (People v Kelly, 62 NY2d 516, 521 [1984]). The court finds that the drastic remedy of dismissal is not appropriate here. The court will leave to the discretion of the trial judge, whether to instruct the jury that it may draw an adverse inference regarding the missing material.
III. Conclusions
It is hereby,
ORDERED, defendant's motion to dismiss the indictment pursuant to CPL§§ 30.30 and 210.20(1)(g) is denied; and it is further
ORDERED, that a new pre-trial hearing be held.
Date: December 15, 2025
Brooklyn, New York
Hon. Edward H. King, J.S.C.