# IN THE COURT OF APPEALS OF IOWA

No. 23-0302
Filed April 10, 2024

**GREGORY C. THOMPSON,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

　　An applicant appeals the denial of postconviction relief.  **AFFIRMED.**

　　Sonia M. Elossais of Carr Law Firm, P.L.C., Des Moines, for appellant.

　　Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee State.

　　Considered by Greer, P.J., and Ahlers and Buller, JJ.  Tabor, J., takes no part.

**BULLER, Judge.**

Gregory C. Thompson appeals the denial of his third application for postconviction relief, challenging how trial counsel handled the victim's mental-health records. We affirm.

Because the State does not raise any procedural bar to this third application, we need not recite the full posture of the preceding actions.[1] As pertinent here, we affirmed Thompson's conviction on direct appeal and summarized the facts:

> Eleven-year-old K.J. ran away from a Des Moines youth shelter. She and a friend met forty-year-old Thompson on a street. Thompson approached the girls. He told them he "was staying at the Holiday Inn in room 1025." Thompson returned to his hotel room and drank alcohol with his two roommates. That night, K.J., by herself, knocked on Thompson's hotel room door. Thompson let K.J. in the room. His roommates left because they "were uncomfortable with the girl being there because she was a runaway and was young."
> Thompson engaged in oral sex with K.J. When his roommates returned to the room, Thompson took K.J. to the bathroom of the hotel's empty fitness room, instructed K.J. to remove her clothing, and performed vaginal intercourse.
> K.J. eventually left the hotel and told a maintenance worker across the street that she had been raped. The worker called 911 and police arrived shortly thereafter. An officer took K.J. back to the hotel, where she identified Thompson as the perpetrator. Swabs taken during a sexual assault examination showed the presence of Thompson's semen in K.J.'s vagina.

*State v. Thompson*, No. 06-1916, 2008 WL 2901998, at *1 (Iowa Ct. App. July 30, 2008). Thompson's first two postconviction-relief applications were consolidated and eventually dismissed in 2012. In 2018, Thompson again sought postconviction relief in this case, challenging—among other now-abandoned

---

[1] Although conviction was final in September 2008 and this application was filed in 2018, neither party nor the postconviction court raised or considered the statute of limitations. *See* Iowa Code § 822.3 (2018).

claims—trial counsel's effectiveness in advocating to see and use the child victim's mental-health records. The postconviction court denied relief, and Thompson appeals.

We review ineffective-assistance-of-counsel claims de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A postconviction applicant claiming ineffective assistance must prove both (1) counsel's performance fell below reasonable standards and (2) if counsel had acted differently, there would be a reasonable probability of a different outcome at trial. *Id.* at 687, 694; *see Sothman*, 967 N.W.2d 522–23.

Thompson argues trial counsel should have done more to investigate and possibly obtain mental-health records for K.J. According to his testimony at the postconviction trial, a police officer told Thompson K.J. had made false reports before. The prosecutor in the underlying criminal case also made a statement during a status conference that K.J. had made false statements about her father "in the past." And, during her criminal-trial testimony, K.J. testified she "lied a lot."

Before assessing the merits, we note a record discrepancy. The parties told the postconviction court that an in camera review of mental-health records took place during the underlying criminal case, and the criminal-trial court ruled from the bench that none of the reviewed material was subject to disclosure to the defense. The parties did not submit the relevant portion of the transcript as an exhibit, and the postconviction court was apparently unable to locate the oral ruling

in its own review. But our review of the record discloses an exhibit in which an appellate prosecutor summarized the relevant procedural history and the oral ruling was captured in the criminal-trial transcript. Specifically, the court ruled it was not required to disclose "any or all" of the mental-health records to the defense. Because the postconviction court appears to have not had access to the sealed records when it reviewed this case, we decline to review these records ourselves for the first time on appeal. But because the parties cited the oral ruling and it should have been considered by the postconviction court, we consider the oral ruling.

Shifting to the merits, Thompson claims the mental-health records might have undermined K.J.'s credibility and his trial counsel should have done something different after the court ruled they would not be disclosed. This type of generalized speculative claim cannot establish breach of an essential duty or the reasonable probability of a different outcome. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994).

Thompson admits in his brief that, in 2006, "mental-health records were covered by physician-patient privilege" and the only exception at the time was for records in the State's possession. *See State v. Stratton*, 519 N.W.2d 403, 404– 05 (Iowa 1994). Even if we assume the records reviewed in camera were subject to discovery under *Stratton* (and there is no evidence they were), the criminal-trial court concluded it was not required to provide "any or all" of the reviewed records to the defense. Thompson did not appeal or otherwise challenge that ruling. And he offers no reason to believe trial counsel could have challenged this ruling on any legal theory that carried a reasonable probability of success in 2006. Even

under today's law, in camera review of mental-health records is permitted, and a criminal defendant cannot demand production of documents on the theory the trial court may not recognize evidence as exculpatory. *See State v. Leedom*, No. 20-0561, 2021 WL 1904653, at *4 (Iowa Ct. App. May 12, 2021); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 61 (1987) (finding no requirement "confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence"). Thus, trial counsel did not breach any essential duty.

We also conclude Thompson cannot demonstrate *Strickland* prejudice. He failed to prove the records contained exculpatory information or that he would have been acquitted if his trial counsel had done something different. K.J. admitted to the jury she lied "a lot," and we question whether any other specific instance of false statements would have moved the needle meaningfully toward acquittal. The strength of the State's evidence—including Thompson's semen found inside eleven-year-old K.J.'s vagina—firmly closes the door on the prejudice prong. As our court in 2008 succinctly concluded, the evidence of Thompson's guilt was "overwhelming." *Thompson*, 2008 WL 2901998, at *5.

**AFFIRMED.**